A. N. LINDSAY, Respondent, v. NICHOLS & SHEPARD THRESHING MACHINE COMPANY, Appellant.

(69 A.L.R. 744, 229 N. W. 808.)

Opinion filed March 17, 1930.

*Holt, Frame & Nilles,* for appellant.

*Shure & Murphy,* for respondent.

BIRDZELL, J. This is an action for damages for the failure and refusal of the defendant to deliver to the plaintiff a secondhand separator. The plaintiff had judgment in the court below and the defendant appeals. The facts necessary to an understanding of the questions presented on appeal may be briefly stated as follows: On the 15th day of August, 1928, the plaintiff who had just finished cutting his grain came to the place of business of the defendant in Fargo, North Dakota,

in search of a secondhand separator. He there found a machine which he regarded as suitable and made a deal for it with the assistant manager of the Fargo branch of the defendant corporation. He agreed to pay $50 down, $250 on October 1, 1928, and $350 on October 1, 1929. The machine had been somewhat damaged and the defendant was to put it in repair. The parties are not agreed as to whether the machine was to be delivered on Saturday, the 18th of August, or whether that date was set as an approximate date for delivery. The plaintiff signed a written order embodying the above mentioned terms in which the delivery date was placed at "on or about the 18 day of August, 1928." This order recited that it contained every term and condition connected with the purchase. There is evidence that the plaintiff explained to the defendant's assistant manager his desire to have the machine delivered as early as possible in order that he might thresh his own grain and fulfill some contracts for threshing grain for neighbors. Between August 15th and 18th, the plaintiff busied himself with making preparations for using the machine, purchasing such articles as a wagon, racks, blankets and dishes. He returned to the defendant's place and, according to his testimony, purchased a secondhand belt. The defendant's agent, however, testified that the belt was taken without his authority and without any deal being made for it. On Saturday, August 18th, the defendant declined to deliver the machine. At this juncture the owner of the land which the plaintiff was farming offered to pay the amount of the deferred payment which would be due in October, 1928. There is some question as to whether the plaintiff had given the correct statement of his indebtedness in his property statement incorporated in the order as a basis for credit. The plaintiff promptly made further search for a suitable machine and was able to purchase a smaller separator which was delivered to him on Tuesday, August 21st, and with which he began threshing that afternoon. The defendant endeavored to return the plaintiff's check for the cash payment of $50, enclosing it in a registered letter dated August 18th which purported to be a formal notice of rejection of the order. The plaintiff declined to receive the registered letter and the check was never cashed. It started raining sometime between the 22nd and the 24th of August, and on the 24th and following days it rained so much that the plaintiff was forced to abandon threshing until the 3rd of September. The rains continued

to the point where the grain which the plaintiff contemplated threshing was greatly damaged and a large portion of it lost. He was unable to fulfill his contracts for threshing for the neighbors.

There were three main elements of damage submitted to the jury: the profits resulting from the inability of the plaintiff to fulfill his threshing contracts with his neighbors, expense of special preparation to use the machine, and the damage to and loss of the plaintiff's grain due to the rains. It is the claim of the plaintiff that the defendant had notice of these contracts and of the necessity for an early delivery of the machine in order that the grain might be promptly threshed and the weather hazard eliminated. A verdict was returned for $1300 upon which judgment was entered.

The first contention of the appellant is that there was no contract. It is stated, in substance, that the plaintiff is bound by the written order which is signed by him and that this order would not ripen into a contract until it was accepted by the defendant and that there was no evidence of its acceptance or of any obligation to accept it. We are of the opinion that there was sufficient evidence introduced at the trial to make the question of the existence of a contract one of fact. There is evidence that the plaintiff was dealing directly with the assistant manager of the Fargo branch of the defendant corporation. There is also evidence that the manager was aware of the deal or at least was present during the time it was pending. According to the language of the order it is not required to be sent to the home office of the defendant. It says that the purchaser "understands that this order must be sent to Nichols & Shepard Company, Battle Creek, Michigan, *or one of its regularly established branches for acceptance."* Clearly, there was sufficient evidence to present a question of fact for the jury as to whether or not a contract to sell and to buy this particular machine was made.

It is next contended that the elements of damage which the jury was permitted to consider in arriving at a verdict were not proper in that the damage to the grain caused by the excessive rains was not a loss which was proximately caused by any breach of the defendant's contract to deliver, or one which in the ordinary course of things would be likely to result therefrom (Comp. Laws 1913, § 7146); and that it is not a loss or damage which might be fairly said to have been within the con-

templation of the parties at the time of the making of the contract within the rule of the leading case of Hadley v. Baxendale, 9 Exch. 341, 156 Eng. Reprint, 145, 5 Eng. Rul. Cas. 502. There can be no doubt that where a delivery date is fixed in a contract to sell a threshing machine, and where the evidence shows that the contract has been made and the date fixed with reference to special circumstances, such as the desire of the purchaser to promptly remove his grain from adverse weather hazard or to enable him to perform existing contracts to thresh for others, a delay resulting in damage to the crop from the contemplated hazard or in the loss of profits due to the consequent inability to perform such contracts would be recoverable. Smeed v. Foord, 1 El. & El. 602, 120 Eng. Reprint, 1035; Houser v. Pearce, 13 Kan. 104. But damage to the crops from rain in such cases where the contract is not entered into under the special or exceptional circumstances mentioned is not recoverable. Hayes v. Cooley, 13 N. D. 204, 100 N. W. 250.

In order, however, for such damages to be recoverable in any event the evidence must show with a reasonable degree of certainty that they were occasioned by the breach of contract. It is not the law that a loss sustained through adverse weather conditions may be visited upon one who has broken his contract to deliver a threshing machine merely by showing that the contracting parties contemplated the reduction of the weather hazard. In order for the loss to be visited upon the seller in such cases it must appear that it was due to the breach of the contract. In the instant case there is no testimony from which the jury can say that had the machine been delivered in accordance with the contract, the defendant would have been able to have threshed his entire crop before the rain. It is not contended that this machine was required to be delivered at a time which would have enabled the defendant to have started his threshing earlier than Monday, the 20th. The plaintiff himself testifies that it rained between the 22nd and the 24th of August, and that after the 24th he was not able to thresh until the 3rd of September. Much less is it shown that he would have been able to have fulfilled his contracts with the neighbors. He predicates damages upon lost profits on these contracts at $40 a day for fifteen days without showing that under the adverse weather conditions he would have been able, in fulfillment of his contracts, to have threshed this many days.

True, the plaintiff testified that if he had had this particular machine he would have been able to thresh for his neighbors as contemplated, but the circumstances entirely refute this testimony. In fact, one of the neighbors with whom he had such a contract and who was called as a witness by the plaintiff testified to the effect that the rains were the heaviest he had seen at that season of the year in fifty years' experience, and that he sustained a complete loss of a large portion of his crop due to those rains; in other words, that a portion was never threshed. Since, under the plaintiff's testimony, he had at least 450 acres of grain to thresh for himself which he contemplated threshing first, it is obvious that he could not have completed his neighbors' threshing in time to have saved it from the deluge which ultimately destroyed a large portion of it, and if he had, clearly, he would not have earned $40 a day net for *fifteen* days.

The plaintiff likewise was permitted to testify, over objection, to expenditures he had made in preparation for threshing by way of purchasing a wagon, racks, blankets, dishes, etc. While his testimony indicates he had no use for these articles on account of the failure of the defendant to deliver the machine, the evidence does not negative that this property had a value. If the property was not required under the altered arrangements incident to the purchase of a smaller machine, the reason should be made to appear. But in any event it is obvious that the plaintiff's damage on this account is no more than the difference between what these items of special preparation reasonably cost and their actual value—not their value *to him,* as the court instructed the jury.

On account of failure of the evidence to show with sufficient certainty that the elements of damage sought to be proved were occasioned by the defendant's breach of contract and on account of the instructions which submitted these elements to the jury, the judgment must be reversed and a new trial awarded. It is so ordered.

Burke, Ch. J., and Christianson, Nuessle and Burr, JJ., concur.